IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:15-CR-170-H

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | **MEMORANDUM &** |
| CONNELL TYRONE GOINS, JR., ) | **RECOMMENDATION** |
| ) | |
| Defendant. ) | |

This matter is before the court on Defendant's motion to suppress [DE #21], which has been referred to the undersigned for memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). The Government filed a response in opposition to the motion to suppress. To further develop the record, the undersigned conducted an evidentiary hearing on November 19, 2015, at which the Government and Defendant, with counsel, appeared. Accordingly, the matter is now ripe for decision.

## STATEMENT OF THE CASE

On May 27, 2015, a federal grand jury returned a one-count indictment charging Connell Tyrone Goins, Jr. ("Goins") with felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924. On August 21, 2015, Goins filed the instant motion to suppress. Goins contends that he was subjected to an unlawful and unconstitutional search and seizure of his person and that the Fourth Amendment demands that any evidence obtained, including any inculpatory statements made by him, be suppressed. The government argues that Defendant showed the firearm to the responding officer, Harnett County Sheriff's Deputy Jaggers, and that the discovery of the firearm was not the product of an illegal detention or pat-down.

## STATEMENT OF THE FACTS

At the evidentiary hearing on Goins' motion, the court heard the testimony of Deputy Duncan Jaggers and Deputy Joseph Myatt, both of whom are employed with the Harnett County Sheriff's Department. Based upon the officers' testimony, the undersigned makes the following findings of fact.[1]

At approximately 7:00 a.m. on December 20, 2014, Deputy Jaggers had just started his shift near Shawtown in Harnett County when dispatch requested EMS and a deputy to respond to a black male lying in the roadway at the intersection of Shawtown School Road and Bailey Way. Upon responding to the call, Deputy Jaggers saw an SUV parked in the oncoming lane and a man standing outside the vehicle. EMS pulled up to the scene at the same time as Deputy Jaggers. Deputy Jaggers approached the man outside the SUV, and the man indicated that there was another male laying in the ditch that would not respond to verbal communication. Deputy Jagger then saw a black male lying in the ditch perpendicular to the roadway.

Deputy Jaggers testified that he is familiar with the area of Shawtown and that it is a high crime area in which several calls are received each year concerning people lying in the roadway or nearby ditches. Deputy Jaggers further testified that such people are often victims of crimes and it is not uncommon for such people to be in possession of weapons. As such, Deputy Jaggers was concerned with the safety of the area.

After speaking with the male outside the SUV, Deputy Jaggers approached the male in the ditch, who he later identified as Goins. Deputy Jaggers knelt down, tapped Goins on the shoulder and asked if he was okay. After a brief pause, Goins opened his eyes and responded that he was

---

[1] No other evidence was entered into the record.

just "resting." Deputy Jaggers indicated that he felt the need to spend more time with Goins because EMS would have to approach in order to examine him. Given the time of day and the fact that Goins was asleep on the roadside, Deputy Jaggers continued to assess the situation.

Deputy Jaggers observed that Goins' left hand was visible lying on the ground beside him. Goins' right hand was in his coat pocket. Deputy Jaggers explained that in his training and experience, people with only one hand in their pocket may have something in their pocket that they are trying to protect or readily use. Deputy Jaggers then asked Goins to take his right hand out of his coat pocket. Goins looked at Deputy Jaggers and began to remove his hand. When Goins began to remove his hand, Deputy Jaggers observed the butt of a firearm. Deputy Jaggers immediately placed his hand on Goins' hand to stop Goins from removing the weapon and drew his service weapon. The barrel of Goins' firearm did not clear the pocket.

Deputy Jaggers requested several times that Goins let go of the firearm, but Goins continued to move his hand on the firearm and did not let go. Deputy Jaggers believed Goins' finger was in the trigger guard of the firearm.

Deputy Jaggers then asked EMS to call for more help. A few minutes later, Deputy Myatt arrived at the scene. Deputy Myatt also saw what appeared to be a firearm in Goins' pocket. Both Deputy Jaggers and Deputy Myatt told Goins to let go of the firearm. There was a struggle for two to three minutes before the deputies were able to rest the firearm from Goins' grip. After the firearm was secured, Goins was placed under arrest.

## **DISCUSSION**

The Fourth Amendment guarantees the right of the people to be secure against unreasonable searches and seizures of "their persons, houses, papers, and effects." U.S. Const. amend. IV. "This inestimable right of personal security belongs as much to the citizen on the

streets of our cities as to the homeowner closeted in his study to dispose of his secret affairs." *Terry v. Ohio*, 392 U.S. 1, 8-9 (1968). The "[t]emporary detention of individuals . . . by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of this provision." *Whren v. United States*, 517 U.S. 806, 809-10 (1996). Nevertheless, "'the balance between the public interest and the individual's right to personal security' tilts in favor of a standard less than probable cause" in cases of brief investigatory stops of persons or vehicles. *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975)). Thus, "the Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion to believe that criminal activity 'may be afoot.'" *Id.* (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)).

Whether reasonable suspicion exists to support such a stop is a factual question "not readily, or even usefully, reduced to a neat set of legal rules, but, rather, entails commons sense, nontechnical conceptions that deal with factual and practical considerations of everyday life on which reasonable and prudent persons, not legal technicians, act." *United States v. Foreman*, 369 F.3d 776, 781 (4th Cir. 2004). "Reasonable suspicion is a 'less demanding standard than probable cause,' requiring a showing 'considerably less than preponderance of the evidence.'" *United States v. Jones*, 289 Fed. App'x 593, 597 (4th Cir. 2008). "A host of factors can contribute to a basis for reasonable suspicion, including the context of the stop, the crime rate in the area, and the nervous or evasive behavior of the suspect." *United States v. George*, 732 F.3d 296, 299 (4th Cir. 2013).

The Fourth Amendment is generally not implicated in a "police-citizen encounter" where law enforcement officers approach someone in a public place and ask him a few questions. *Florida v. Bostick*, 501 U.S. 429, 434 (1991). "So long as a reasonable person would feel free to disregard

the police and go about his business, the encounter is consensual and no reasonable suspicion is required." *Id.* Where, however, the officers' conduct is such that a reasonable person would not feel free to decline the officers' requests or otherwise terminate the encounter, a Fourth Amendment seizure occurs. *Id.* at 439. A request from an officer to remove one's hand from one's pocket, without more, is insufficient to effectuate a seizure. *See United States v. Adebanjo*, 54 F.3d 774 (4th Cir. 1995) (concluding that the defendant was not seized when the officer told him to remove his hand from his pocket because the defendant "was free to leave; his movement was not restricted, nor was his liberty restrained").

An exception to the Fourth Amendment warrant requirement is a warrantless search while a law enforcement officer is performing community caretaking functions. *Hunsberger v. Wood*, 570 F.3d 546, 553 (4th Cir. 2009) (citing *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973)). A community caretaking function is one "totally divorced from the detection, investigation, or acquisition of evidence relating to a violation of a criminal statute." *Dombrowski*, 413 U.S. at 441.

When Officer Jagger's encounter with Goins began, Deputy Jaggers was acting within the community caretaking function. Deputy Jaggers noted that Shawtown was a high-crime area, and that it was not unusual that calls concerning people lying in the roadway referred to victims in criminal assaults. However, Deputy Jaggers did not state that he was investigating a crime or that a crime had been reported. Additionally, Deputy Jaggers was not in the process of acquiring evidence relating to the violation of a criminal statute. Instead, the facts demonstrate that Deputy Jaggers was responding to a call concerning an unconscious black male near the roadway. After responding, Deputy Jaggers then took steps in order to assess the situation.

Upon inquiring whether Goins was okay, Goins responded that he was okay and was "resting." Deputy Jaggers testified that he wanted to further assess the situation, and requested

5

that Goins remove his right hand from his jacket pocket. Goins was not seized pursuant to the Fourth Amendment by Deputy Jagger's request.

At the point at which Goins removed his hand from his pocket while holding the barrel of a firearm, officer safety justified Deputy Jaggers' subsequent actions. In connection with an investigatory stop, an officer may conduct a limited search or frisk for weapons if he is justified in believing that a person may be armed and dangerous. *Terry*, 392 U.S. at 24. The purpose of such a frisk is "to allow the officer to pursue his investigation without fear of violence." *Adams v. Williams*, 407 U.S. 143, 146 (1972). "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry*, 392 U.S. 27.

Deputy Jaggers had a justified belief that Goins may be armed and dangerous when he observed Goins removing a firearm from his pocket with his finger in the trigger guard. Deputy Jaggers immediately grabbed Goins' hand holding the weapon. The entire brief encounter, from when the gun became visible to the moment Goins relinquished possession, was entirely within the legitimate scope of securing a weapon for officer safety. Accordingly, Goins' motion to suppress the evidence seized from his person and the statements he made thereafter should be denied.

## **CONCLUSION**

For the foregoing reasons, the undersigned RECOMMENDS that Defendant's Motion to Suppress [DE #21] be DENIED.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **April 21, 2016**, to file written objections to the Memorandum and Recommendation. The presiding district judge

must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.,* 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

A party that does not file written objections to the Memorandum and Recommendation by the foregoing deadline, will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, a party's failure to file written objections by the foregoing deadline may bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).

This 4th day of April 2016.

*[signature: Kimberly A. Swank]*
KIMBERLY A. SWANK
United States Magistrate Judge